# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA ROTUNA | ) | CASE NO. 4:09CV1608 |
| On behalf of himself and all others | ) | |
| similarly situated, | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| WEST CUSTOMER MANAGEMENT | ) | |
| GROUP, LLC | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Joshua Rotuna ("Representative Plaintiff") has moved the Court, pursuant to Fed. R. Civ. 23(e), to approve, as fair and reasonable, a Class Action Settlement Agreement ("Settlement Agreement") between Plaintiff and West Customer Management Group, LLC ("West" or "Defendant"). (Doc. No. 45.) Defendant does not oppose the motion, and endorses the settlement entered into by the parties.

Having conducted the Fairness Hearing on June 9, 2010, and having reviewed the Settlement Agreement, as well as Plaintiff's Motion for Approval of Class Action Settlement Agreement ("Motion for Approval") and the Declaration of Anthony J. Lazzaro appended thereto, the Court is prepared to memorialize its in-court approval of the settlement.[1]

---

[1] Unless otherwise defined, all terms used in this Memorandum Opinion shall have the same meanings as defined in the Settlement Agreement.

**Background**

On July 14, 2009, Representative Plaintiff filed this Action as a collective action under § 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). Between February 2, 2009 and July 1, 2009, Representative Plaintiff was employed by Defendant as a customer service representative. (Doc. No. 37, Second Amended Complaint at § 14.) Representative Plaintiff alleges that he and other similarly-situated employees of Defendant were required by Defendant to perform unpaid work before clocking in each day, "including but not limited to booting-up Defendant's computer systems and initializing Defendant's numerous software programs."[2] (*Id.* at ¶ 18.) Representative Plaintiff alleged that this practice of requiring employees to boot up their computers before they could clock in violated the FLSA, 29 U.S.C. § 207, and the Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio Rev. Code § 4111.03(D)(3). (*Id.* at ¶¶ 43, 50.) Representative Plaintiff further alleged that Defendant's failure to keep records of all hours worked each workday, including the time an employee spent waiting to boot up, violated the recordkeeping requirements of 29 C.F.R. 512.2(a)(7). (*Id.* at ¶ 44.)

On October 19, 2009, the Court conducted a Case Management Conference in this action, wherein the Court set dates and deadlines for the management of the lawsuit. (*See* Minutes, and Doc. No. 18, Case Management Plan and Trial Order

---

[2] Because an employee "clocked in" through his computer, the employee would have to boot up the computer before he could get credit for time spent at work.

(CMPTO)). During the conference, the parties informed the Court that they had reached a tentative agreement as to conditional certification of the class.

Beginning in September 2009 and continuing into January 2010, the parties engaged in extensive, arms length settlement discussions in an attempt to reach an agreement to settle the Litigation.  On January 5, 2010, the parties advised the Court that they had reached a tentative agreement, but required more time to finalize the terms of the agreement and reduce it to writing. (*See* Doc. No. 34, and non-document Court Order of January 6, 2010.) The Court granted the parties additional time to finalize the settlement, suspending all dates and deadlines set forth in the Court's CMPTO. (*See* Minutes.)

On February 12, 2010, Representative Plaintiff filed his Unopposed Motion for Preliminary Approval of the Class Action Settlement Agreement (Doc. No. 38)), which the Court granted on February 25, 2010. The Court's Order provisionally certified the Class pursuant to Rule 23(a) and (b)(3), granted preliminary approval of the Settlement Agreement Class pursuant to Rule 23(e), and approved the form, content, and method of distribution of notices to Class Members of the pendency of this Action, the proposed settlement, and the date of the Fairness Hearing ("Class Notice," *See* Doc. No. 40). The Court provisionally approved Representative Plaintiff Joshua Rotuna as Class Representative, and his Service Award, and appointed as Class Counsel Anthony J. Lazzaro, of The Lazzaro Law Firm, LLC, and the payment of attorneys' fees. On May 7, 2010, Representative Plaintiff filed the present Unopposed Motion for Final Approval of the Settlement Agreement. (Doc. No. 45.)

3

The Settlement Agreement proposes to settle claims of Representative Plaintiff and the Class Members. The proposed class settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). The issues in this case were contested, as is evidenced from the fact that Defendant challenged its liability under the FLSA and OMFWSA and raised several affirmative defenses. A settlement was achieved only after arms-length and good faith negotiations between the parties and their counsel, who have extensive experience litigating wage and hour claims.

On March 15, 2010, notice of the settlement was distributed to members of the class in the form and manner approved by the Court. (*See* Document No. 40, Proposed Notice.) Of the 1,778 notices that were sent out, 238 were initially returned as undelivered. Class Counsel performed traces utilizing the National Change of Address Database to update the addresses for these undelivered notices. Counsel was able to ascertain updated addresses for 191 members, and service was attempted again using the updated addresses. Ten notices were returned with further updated addresses, and these notices were re-mailed. (Doc. No. 45, Ex. 1, Declaration of Anthony Lazzaro at ¶¶ 4-5.) Ultimately, less than 50 Class Members were unable to be served with notice. The Court finds that the notice was reasonable and the best notice practicable, and satisfied all of the requirements of Fed. R. Civ. P. 23 and due process.

The Court conducted a Fairness Hearing on June 9, 2010. Representative Plaintiff, along with Class Members Cindy Rotuna and Johnny Johnson, were in attendance. None of the Class Members present voiced objections to the Settlement Agreement, and Representative Plaintiff announced his approval of the Settlement

4

Agreement on the record. Though they were given notice of the hearing and afforded an opportunity to appear, none of the other Class Members attended the Fairness Hearing. In addition, none of the absent Class Members filed objections with Class Counsel.

**Final Approval of the Class**

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) states:

> One or more members of a class may sue as representatives on behalf of all only if (1) the class is so numerous that joinder is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If all the requirements are satisfied, the case may be maintained as a class action if the plaintiffs also satisfy one of the three provisions of Rule 23(b).

The Court must undertake a "rigorous analysis" of each factor, *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982), and the burden is on the plaintiff to establish each element. *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The Court has broad discretion in certifying class actions, but must exercise its discretion within the framework of Rule 23. *Eddleman v. Jefferson County, Ky*., 96 F.3d 1448, at *3 (6th Cir. 1996) (table); *In re Am. Med. Sys*., 75 F.3d 1069, 1079 (6th Cir. 1996) (citations omitted). When some doubt arises addressing the Rule 23 factors, the district court may not inquire into the merits of the class representatives' underlying claims, *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 551 (S.D. Ohio 19991) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)), but instead must accept as true the factual allegations in the complaint. *Id*. at 552.

5

The Settlement Agreement defines the Class as follows:

All present and former West customer service representatives in Niles, Ohio and those persons who opted-in to this action on or before November 2, 2009, but specifically excluding trainees, who at any time between July 31, 2006 and July 24, 2009 were paid for 39.50 or more hours in a pay week in which they provided services for Cingular/AT&T Customer Care (Departments 149, 153, and 617) or AT&T Titan (Department 144).

(Settlement Agreement at ¶ 3.) The parties agree that the Class constitutes at least 1,778 present and former employees.

The Court finds that the proposed settlement satisfies the standard for final approval of a class action settlement under Fed. R. Civ. P. 23(e). The proposed settlement class satisfies Rule 23(a)'s requirements of commonality, numerosity, typicality, and adequacy of representation, as well as Rule 23(b)'s requirements of predominance and superiority.

In particular, the Court finds that the Class, estimated at approximately 1,800 members, is sufficiently large such that joinder of all Class Members would be impracticable. *See Chesner v. Stewart Title Guar. Co.*, 2008 U.S. Dist. LEXIS 19303, at *16 (N.D. Ohio Jan. 23, 2008).

The Court also finds that there are common issues of law and fact that predominate. All Class Members seek resolution of the common legal question of whether they are entitled to compensation for time booting up their computers prior to clocking in under federal and state law. Because resolution of this common issue will affect the class as a whole, *see Bert v. Ak Steel Corp.*, 2006 U.S. Dist. LEXIS 22904, at *16 (S.D. Ohio Apr. 24, 2006) (citing *Falick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998)), this common question, necessitating a detailed factual inquiry and

legal analysis, can be resolved most efficiently in the context of a class action.

As for the requirement of typicality, the interests of Representative Plaintiff arise from the same events and course of conduct that give rise to the claims of the other Class Members. *See In re American Medical Sys*., 75 F.3d at 1082. Representative Plaintiff shares in the interest of his class in recovering payment for disputed booting up time. The fact that an individualized review of each claim brought by the various members will have to be made to determine the amount of recovery does not destroy typicality. *See id.* at 1080.

"Adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment." *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002). To assess the adequacy of the representation, the Court must consider whether the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two prongs to this inquiry: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976).

Both prongs are met. Here, Representative Plaintiff shares with the putative Class Members the desire to recover payment for the disputed time at issue. Further, Class Counsel is adequate. Class Counsel has considerable experience litigating wage and hour class lawsuits, and has demonstrated a willingness to purse the claims of the members of the putative class.

In addition, the Court finds that Rule 23(b)'s requirements of

7

predominance and superiority are met. The predominance inquiry tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623. This requirement is satisfied where the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). The issue regarding the disputed time booting up the computers presented under the FLSA and the OMFWSA predominate over any individual questions.

The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Given the arguably limited resources of each individual class member, there is a strong interest in prosecuting the claims in one particular forum. In addition, the Court is not aware of any other actions that have been brought by individuals of the putative class. The Court finds that Representative Plaintiff has successfully demonstrated that a class action is superior to individual suits.

**Approval of the Settlement**

The FLSA was enacted for the purpose of protecting all covered workers from the inequities in the workplace that result from the differences in bargaining power between employers and employees. *See Barrentine v. Arkansas-Best Freight System, Inc.*,

8

450 U.S. 728, 739 (1981). The goal of the FLSA was to ensure that each employee covered by the Act received "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Id.* at 739 (internal citation and quotations omitted). The FLSA, therefore, provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee […] affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be […]." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). The two circumstances in which the FLSA may be compromised are claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(b), and when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).

The latter exception applies to the instant case. "[T]he Court must ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 719 (E.D. La. 2000) (citing 29 U.S.C. §§ 206, 207). The existence of a question as to entitlement to compensation under the FLSA serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. Thus, to ensure that Representative Plaintiff and the Class Members have not abandoned

9

their rights under the FLSA, "the court must determine whether such a question, or bona fide dispute, exists." *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4723399, at *3 (E.D. Ky. Oct. 23, 2008).

The Settlement Agreement resolves a bona fide dispute under the FLSA and contains terms that seek to avoid further actions under the FLSA and the OMFWSA. Both sides took positions that clearly demonstrated that the legal and factual issues presented in this action did not necessarily favor either side. While Representative Plaintiff maintained that the disputed time was compensable, Defendant advanced the position that this time was not compensable pursuant to the *de minimis* doctrine and the provisions of the Portal-to-Portal Act, 29 U.S.C. § 254. (Doc. No. 43, Answer to Third Amended Complaint at ¶¶ 61-62.) In addition, at the Fairness Hearing, defense counsel noted that it had intended to challenge both the propriety and the scope of the class under a theory that the challenged practice of excluding the disputed time did not constitute a company-wide policy.[3] Thus, the Court is satisfied that there is a "bona fide dispute" that justifies settlement of the claims.

In evaluating the fairness and reasonableness of the Settlement Agreement, itself, the Court considers the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the

---

[3] Counsel explained that the "written policy" identified in the Second Amended Complaint was nothing more than a memorandum written by one supervisor, and that the policy expressed in the memorandum that time spent logging in would not be compensable was not endorsed by Defendant and did not reflect company-wide practices. As such, Defendant believed that, had this litigation continued, it would have been able to exclude many individuals from the class on the ground that they were not subjected to the policy in question. In the alternative, the presence of these dissimilarly situated individuals in the class might have destroyed the requirements of commonality and typicality.

likelihood of the success on the merits, the opinion of class counsel and class representatives, the reaction of absent class members, and the public interest in settlement. *Crawford,* 2008 WL 4723399, at *3 (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Each of these factors favors settlement.

The settlement was only reached after the parties engaged in five months of arms-length negotiation. Both Representative Plaintiff and Class Counsel have indicated that they believe that the settlement is fair, reasonable, and adequate and in the best interests of the class, and none of the absent Class Members have objected to the settlement. Moreover, it is likely that, in the absence of a resolution, this litigation will continue on for some time.

Additionally, given the factual and legal complexity of the case, there is no guarantee that Representative Plaintiff and the Class would prevail at trial. In contrast, the Settlement Agreement assures that they will receive substantial compensation for time spent in the disputed activities. Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation. *See Crawford*, 2008 WL 4723399, at *9.

The Court has considered all of the relevant factors individually and collectively in evaluating the proposed settlement. The balance of factors weighs in favor of a finding that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute.

It is also a court's responsibility to ensure that the distribution of the

11

settlement proceeds is equitable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). Equity does not dictate, however, that the distribution be on a pro-rata basis. *See UAW v. GMC*, 497 F.3d 615, 628 (6th Cir. 2007) (citing *Ortiz*, 527 U.S. at 855) ("Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be 'fair, reasonable, and adequate.'")

The Court approves the method of calculation and proposed distribution of settlement payments as fair and equitable. The total Settlement Payment, after deduction of the Service Awards to the Representative Plaintiffs and attorneys' fees and expense reimbursements to Class Counsel and the Class Administrator, is to be distributed to the Class Members, which are to be calculated on a proportional basis based on the individuals' relevant workweeks and shifts during the Calculation Period, according to payroll information maintained by Defendant and provided to Class Counsel, and according to the further specifications set forth in the Settlement Agreement.[4] Class Counsel has submitted the proposed Schedule of Individual Payments to the Court for approval. (Doc. No. 47.) The Court approves the Schedule of Individual Payments and orders that such payments be distributed in the manner, and upon the terms and conditions, set forth in the Settlement Agreement.

The Settlement Agreement also provides for a service award of $3,500 to

---

[4] Specifically, according to the terms of the Settlement, the Individual payments were to be calculated by providing individual payments were to be calculated by providing for a floor payment of ten dollars ($10) (approximately 3 minutes of overtime compensation per day for approximately a 2.5 week period) to each Class Member, and then by adding 3 minutes to the beginning of each individual's shift daily during the Calculation Period for any week in which an individual's payroll records reflect 39.5 or more hours paid.

12

be paid to Representative Plaintiff. Such awards are not uncommon, and "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted). Representative Plaintiff participated in conferences, attended the Case Management Conference and Fairness Hearing, and provided other services necessary for the prosecution of this case. (Lazarro Decl. at ¶ 22.) The Court approves the Service Award to the Representative Plaintiff in recognition of his service in this Action, and orders that such payment be made in the manner, and upon the terms and conditions, set forth in the Settlement Agreement.

### Attorneys' Fees

The Settlement Agreement proposes an award to Class Counsel of attorneys' fees for one-third of the total Settlement Payment. An attorneys' fee award must be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "A reasonable fee is 'one that is adequate to attract competent counsel but […does] not produce windfalls to attorneys.'" *Reed,* 179 F.3d at 471 (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (internal citation omitted)). District courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier. *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516-17 (6th Cir. 1993); *Bailey v. AK Steel Corp.,* 2008 U.S. Dist. LEXIS 18838, at *4-*5 (S.D. Ohio Feb. 28, 2008). Regardless of

how the award is calculated, the final amount must be reasonable. *Rawlings*, 9 F.3d at 516; *Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983).

The district court must "provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Rawlings*, 9 F.3d at 516. *See Hensley*, 461 U.S. at 437. The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated.

In light of the exceptional result obtained, and the accomplishment of reaching a resolution before additional resources were expended, the Court finds the percentage of the fund analysis appropriate. In determining what constitutes a reasonable and fair percentage of the fund, the Sixth Circuit teaches that the following factors are to be considered: (1) the value of the benefit to the class; (2) society's interest in rewarding attorneys who achieve such benefits; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the skill of the litigators on both sides.

There can be no doubt that the results achieved for the Class Members are exceptional. The Individual Payments to participants represent between 75% (based on five minutes) to 25% (based on 8 minutes) of claimed unpaid wages, *after* deduction of attorneys' fees and expenses.[5] Such an allocation is well above the 7 % to 11 % average

---

[5] The amount of time spent required for a company computer to boot up was disputed. While Representative Plaintiff and class members estimated that it took between 5 and 8 minutes, Defendant insisted that it took approximately 3 minutes. If Defendant's 3 minute estimate is used, the recovery by Representative Plaintiff and the Class is more than 100%.

result achieved for class members. *See* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: *What Explains Settlements in Shareholder Class Actions*? (National Economic Research Assocs. (NERA) June 1995).

In small cases (such as the one presently before the Court) where the risk of "excessive" or "windfall" fees is not great, counsel may rely upon summaries to demonstrate the time and effort that went into litigating the lawsuit. Manual for Complex Litigation (4th) § 14.121. The Court has reviewed the declaration of Attorney Lazzaro, as well as Class Counsel's Summary of Case Activities (*See* Doc. No. 46), and is satisfied that counsel expended considerable time and effort in litigating this lawsuit and representing the rights of the various Class Members.[6] In reaching this conclusion, the Court underscores the fact that the proposed one-third fee is part of counsel's contingent fee agreement with Representative Plaintiff and all of the Class Members were informed of it before they joined the case.

The contingent nature of the fee agreement also meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved. The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions in this judicial district. *See, e.g., Dillworth v. Case Farms Processing, Inc.,* 5:08CV1694 (N.D. Ohio 2009); *Jackson v. Papa John's*,

---

[6] At the Fairness Hearing, defense counsel commended Class Counsel for his willingness to perform certain administrative duties involving the notice to the Class without compensation to keep the litigation costs down. As a result of these efforts, more money was available in the Common Fund for distribution to the individual class members. In fact, the parties were able to make the payments based on 4 minutes of compensable time instead of the 3 minutes contemplated by the settlement. This upward departure resulted in an impressive overall increase in individual payments of 35 %. It is clear that Class Counsel's efforts inured to the benefit of the Class Members.

Case No. 1:08CV2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co*., 1:08CV73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus*., Case No. 1:07CV1110 (N.D. Ohio 2007).

Having considered all of the circumstances surrounding the attorneys' fees award, the Court finds that it is fair and reasonable. The Court, therefore, approves the payment of attorneys' fees as provided in the Settlement Agreement and the reimbursement of expenses to Class Counsel in the amount set forth in the Summary of Case Activities and Litigation Expenses, and orders that such payments be made in the manner, and upon the terms and conditions, set forth in the Settlement Agreement.

The Court also approves the appointment of Rust Consulting, Inc. as Settlement Administrator, which shall perform the duties set forth in the Settlement Agreement pursuant to the continuing jurisdiction of the Court.  The Court orders that the Settlement Fund Account will be created, established and maintained as a Qualified Settlement Fund pursuant to 26 U.S.C. 468B and its regulations by the Settlement Administrator as a Qualified Settlement Fund subject to the continuing jurisdiction of the Court.

Representative Plaintiff and the members of the Class release claims against West as provided in the Settlement Agreement. Representative Plaintiff also releases claims as provided in the separate Settlement and Release Agreement entered into between Representative Plaintiff and West.

**Conclusion**

For all of the foregoing reasons, Representative Plaintiff's Unopposed

Motion for Approval of the Settlement Agreement (Doc. No. 45) is **GRANTED**. The Settlement Agreement is hereby **APPROVED** as it is a fair and reasonable resolution of a bona fide dispute under federal and state law. The Parties are to bear their respective attorneys' fees and costs except as provided in the Settlement Agreement. The Court retains jurisdiction over this Action for the purpose of enforcing the Settlement. This case is **DISMISSED WITH PREJUDICE**.

       **IT IS SO ORDERED**.

Dated: June 15, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**